ALEJANDRO RAMOS ET AL., Plaintiffs and Appellees, *v.* COMMONWEALTH OF PUERTO RICO ET AL., Defendants and Appellants.

No. R-62-204.     Decided November 25, 1964.

---

*J. B. Fernández Badillo, Solicitor General,* for the Commonwealth. *Faustino R. Aponte* for appellees.

Division composed of Mr. Chief Justice Negrón Fernández, Mr. Justice Blanco Lugo, and Mr. Justice Ramírez Bages.

MR. JUSTICE RAMÍREZ BAGES delivered the opinion of the Court.

We have before our consideration again in this case the liability of a holder of a real property, of which he is not the owner, for the injuries suffered by a third person due to the existence of a defect in the property. In the preceding cases the holder was a lessee; this case concerns a bailee, under the special circumstances that the bailor repaired the property whenever the bailee notified him the necessity for such repair.

According to the findings of fact of the trial court, the Department of Education of Puerto Rico on January 15, 1960 was utilizing a small frame house, property of the Municipality of Humacao, to serve food and breakfast to the poor children of that municipality. In the morning of that day, while minor José Antonio Ramos, son of the appellees herein, was entering the yard of the house where he

was going to eat breakfast, he was trapped by part of the fence as it collapsed, as a result of which he died from the injuries suffered. The foundations of the fence in question were completely in ruins. Previously, at the request of the employees of said department, the municipality repaired a window and a door of said frame house.

It is presumed that the activity of serving breakfast to the children in the frame house in question was operated under the program of child breakfast centers covered by the regulations of said Department promulgated on June 5, 1952 (18 R.&R.P.R. §§ 183–251 to 283).

The trial court decided that the municipality, in failing to comply with its obligations of inspecting the fence, of which it was the owner, and the Commonwealth, in permitting the serving of food in a frame house which had a fence in a ruinous condition, were responsible for the accident which caused the death of the minor and ordered them to pay jointly the amount of $10,000 for damages plus costs and $500 for attorney's fees. We denied the writ of review filed by the municipality and issued the one requested by the Commonwealth.

■ ■ The defect in the fence of the frame house which caused the death of the minor was not apparent or susceptible to be detected in the ordinary use of the property by the bailee or by an ordinary and reasonable inspection thereof by the latter, since the fence was apparently in good condition but actually its foundations had become completely rotted, as established by the oral evidence. It so appears from the photograph admitted in evidence. Can it be said that under said circumstances the Commonwealth, through the Department of Education, failed in its duty and that such failure constitutes negligence which was the cause of the minor's death? We do not believe so, since the bailee was not bound to repair the property nor could he learn of the defect, which would bind it to procure its prompt elimi-

nation. The doctrine applicable to this case is that set forth in *Vázquez* v. *Antuñano*, 61 P.R.R. 745 (1943), to the effect that even when a property is under the exclusive control of the lessee, the lessor is liable for the damages suffered by a third person as a result of the defect in the property in the presence of any of the following circumstances:

(1) the defect could have been detected by the lessee by an ordinary and reasonable inspection and the latter or any other person had given notice thereof to the lessor and he failed to repair it;

(2) the lessor was never notified prior to the defect but the latter was a hidden defect, latent, not detectable by means of an ordinary and reasonable inspection, basing its responsibility in the noncompliance of his obligation pursuant to the provisions of §§ 1444 and 1807 of the Civil Code in force (31 L.P.R.A. §§ 4051 and 5146).[1]

Thus in *Cole* v. *Escambrón Development Co.*, 73 P.R.R. 477 (1952) we imposed liability on the sublessor as well as on the sublessee for the injuries suffered by a third person when a platform, partly constructed over the ocean, collapsed, for the reason that the cause of the accident was the advanced condition of deterioration of the beams and piles which supported the platform, which condition existed at the time of the execution of the sublease contract, and

---

[1] Said §§ 1444 and 1807 of the Civil Code in force provides as follows: "The lessor is obliged:

(1) To deliver to the lessee the thing which is the object of the contract.

(2) To make thereon, during the lease, all the necessary repairs in order to preserve it in condition to serve for the purpose to which it was destined.

(3) To maintain the lessee in the peaceful enjoyment of the lease during all the time of the contract.

(4) To sign and deliver to the lessee a receipt for each payment made by the latter." Section 1444.

"The owner of a building is liable for the damages which may result from the collapse of the whole or a part thereof, if it should occur through the absence of the necessary repairs." Section 1807.

which the sublessor should have known, since the existence
of a long crack on the platform was visible by means of
an ordinary and reasonable inspection and the appearance
of said crack was sufficient warning to him to investigate
the condition of said beams and poles embedded in the ocean.
The reason why liability was imposed on the lessor in this
case was that although he was not notified of the defect
in question, it existed prior to the time when the property
was leased and the property was in ruinous condition since
then. The lessee was found liable because the defect was
visible through an ordinary and reasonable inspection and
he did not comply with his obligation to notify the defect
to the lessor. So that this case was decided pursuant to the
doctrine previously stated.

Our decision in this case is not inconsistent either with
our decision in *Simonpietri* v. *Blanco*; *Lippitt & Simon-
pietri*, 74 P.R.R. 499 (1953). In *Simonpietri*, a sublessee of
part of the second floor of a building sued the owner of
the property for the injuries suffered when he fell on the
stairway which leads to the subleased part. Said owner was
granted leave to file a third party complaint against lessee.
The accident took place when the heel of lessee's shoe got
caught "in a crack in one of the tiles of the stairs tread"
while going down stairs, losing his footing and being forced
to twist his body abruptly. From an inspection it was deter-
mined that the defect in question consisted in "an irregular
crack, made by the passing of time, perceptible if one looks
intently at it" and that "the surface of the tiles is even
with the edging and when one places the foot flat between
the tile and the edging the crack does not show; in order
to notice the defect one must look intently at the crevice,
for otherwise what one sees is a black line just as in the
other steps where existing cracks have been repaired with
cement." The evidence showed that the lessee had the abso-
lute control of the stairway and that he never sent notice

to the lessor of the existence of any defect whatsoever. The lessor occasionally used the stairway. The complaint was dismissed as to the lessor and lessee was ordered to indemnify the damages suffered by the sublessee. Affirming, we said that "although the evidence showed that the defendant [the lessor] Blanco occasionally used the stairway . . . since the defect in the stairway was latent, implied knowledge thereof cannot be imputed to him. In order to impute negligence to the owner of a building, under the circumstances of the instant case, it must be proved that he had knowledge of the defect existing in the stairway." In pointing out that the sublessee in this case was bound to notify the lessor the defect in question, we were constrained to consider that to the effect of such obligation the defect was not really so latent to lessee that it was not detectable by an ordinary and reasonable inspection. We decided that the defect being latent, the sublessee was not bound to notify it to lessee as sublessor in relation to him, so that the sublessor was not relieved of her responsibility to make all necessary repairs to the rented property in order to preserve it in condition to serve for the purpose to which it was destined, pursuant to subd. 2 of § 1444 of the Civil Code, *supra*. Therefore, in so deciding we actually sustained the ruling in *Vázquez*, *supra*. The relation between the sublessor and sublessee being the same as that between the lessor and the lessee, we could have actually decided that the sublessor had not complied with its obligation under said provision, notwithstanding the fact that it did not receive notification from the sublessee for the reason that it *had the exclusive control of the stairway*. Under these circumstances it is not necessary to give notice of the defect, whether it is latent or susceptible of being discovered by means of inspection. *Torres* v. *Fernández*, 56 P.R.R. 459 (1940).

In view of the foregoing the judgment ordering the Commonwealth to pay jointly for the damages, will be reversed, and the complaint as to said defendant will be dismissed.

Mr. Chief Justice Negrón Fernández dissented.